FILED
Apr 23, 2026
09:02 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Chad Graves

v.

Southall Adventures, LLC, et al.

Appeal from the Court of Workers'
Compensation Claims
Thomas L. Wyatt, Judge

Docket No. 2024-50-5540

State File No. 25190-2024

---

### Reversed and Remanded

---

In this second interlocutory appeal, the employer questions the trial court's denial of its request for a continuance of an expedited hearing, as well as its award of medical benefits to the employee. The employee suffered multiple injuries when he fell at work. The employer provided medical treatment initially but later denied some of the recommended medical care. Following the first expedited hearing, the trial court awarded medical benefits for several conditions, including an injury to the employee's left knee, and the employer appealed. On appeal, we reversed the trial court's award of medical benefits for the left knee as the record did not contain sufficient evidence that the knee condition was primarily caused by the work injury. On remand, the employee filed a new request for expedited hearing, again seeking medical treatment of his left knee, which he supported with new medical evidence. The employer sought to schedule a medical examination with its own expert prior to the expedited hearing. Due to ongoing discussions between the parties' attorneys regarding scheduling the exam, the employer filed a request for a continuance. The trial court denied the continuance on the day of the expedited hearing and issued an order awarding medical benefits. The employer has appealed. Having carefully reviewed the record, we reverse the trial court's denial of the requested continuance and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Brady W. Allen and Nicholas J. Peterson, Knoxville, Tennessee, for the employer-appellant, Southall Adventures, LLC

Adam C. Brock-Dagnan, Nashville, Tennessee, for the employee-appellee, Chad Graves

**Factual and Procedural Background**

This is the second interlocutory appeal in this matter. Chad Graves ("Employee") was cleaning a whirlpool in the course and scope of his employment with Southall Adventures, LLC ("Employer"), when he slipped and fell, causing numerous alleged injuries. Employee sought medical treatment with a variety of providers, and Employer denied several aspects of treatment, which was the focus of the initial appeal in this case. This current appeal concerns only Employee's purported injury to the left knee, for which Employee had received a panel and selected Dr. Jeffrey Lawrence. Previously, we provided the following history relative to the left knee:

> Employee brought Dr. Lawrence a note from the walk-in clinic that described posttraumatic stress, left knee injury, pain, and hypertension. The note referred Employee to an orthopedic specialist for evaluation of his knee complaints, and Dr. Lawrence then "recommend[ed] that he be allowed to be seen for his knee from Workers' Comp." . . . He also recommended an authorized evaluation of Employee's left knee complaints, continued physical therapy, and authorization for Employee to see Dr. Robert Lowe, III, another physician in his practice, for Employee's neck complaints.

> In the interim, Employer obtained Employee's past medical records, which documented a 2010 surgical repair to the quadriceps tendon in Employee's left knee. These records also revealed prior treatment for depression and anxiety stemming from a 2020 workers' compensation case. Employer then retained Dr. Junaid Makda to perform a records review in May 2024. Dr. Makda's review included records pertaining to Employee's previous left knee injury along with negative x-rays from the date of injury and May 2024. Ultimately, Dr. Makda opined that the April 10, 2024 incident was not the primary cause of Employee's left knee condition or need for medical treatment of that knee.

> . . . .

> Thereafter, Employer scheduled an employer's examination with Dr. Jeffrey Hazlewood in July 2024. Following that examination, Dr. Hazlewood opined . . . that the April 2024 work accident was not the primary cause of the left knee complaints because, upon examination, he found no objective evidence of an acute injury to the left knee, stating he saw "nothing to suggest any acute injury on examination, nor apparently did the previous physicians that saw [Employee]."

> . . . .

In the interim, Employee attempted to return to work but was unsuccessful.  Employer offered him a buyout to resign from his job in October, and Employee accepted.  Employee testified that he was able to use some of this money to purchase health insurance, which enabled him to obtain treatment for his alleged work injuries.

. . . .

On January 14, 2025, Dr. Bowman surgically repaired medical meniscus and anterior collateral ligament tears in Employee's left knee. . . . That treatment and surgery were not authorized by Employer.

Employee's counsel sent questionnaires to . . . Dr. Bowman seeking causation opinions.  With respect to the left knee, Dr. Bowman was asked:

> Is it your opinion to a reasonable degree of medical certainty – considering [Employee's] self-reported history, as well as the video documentation – that [Employee's] current left knee problems [are] *causally-related* to the April 10, 2024 work injury?

(Emphasis added.)  In response, Dr. Bowman checked "yes."  In light of the prior MRI finding of a "non-acute" ACL tear in the left knee, Dr. Bowman was also asked whether Employee's "on-the-job accident primarily caused" that injury, to which Dr. Bowman responded "no" and wrote, "unclear, but unlikely."

*Graves v. Southall Adventures, LLC*, No. 2024-50-5540, 2025 TN Wrk. Comp. App. Bd. LEXIS 38, at *5-11 (Tenn. Workers' Comp. App. Bd. Aug. 25, 2025) (footnotes omitted).  After holding an expedited hearing, the trial court issued an order awarding some of the relief requested by Employee, which we summarized as follows:

Regarding the left knee, the court weighed the competing opinions of Dr. Bowman and Dr. Hazlewood and concluded that Dr. Bowman's opinion offered the most probable explanation of the causal relationship between Employee's fall and his torn meniscus and ligament injury in the left knee. The court noted that although Dr. Bowman's opinion "was not stated in response to a rigid recitation of statutory language [it] does not limit the Court's confidence in it."  The court also noted that Employee reported left knee pain to the emergency physician he saw on the date of the injury and that an x-ray of the left knee was obtained.  As a result, the court found that Employee had established he would likely prevail at trial in showing his left

knee condition and the need for treatment arose primarily from the work accident.

*Id.*, at \*14-15.

On appeal, we reversed that portion of the trial court's order, stating:

> As applicable to the present case, although we agree with the trial court that a doctor need not necessarily adhere to a rigid recitation of the statutory language addressing expert medical causation, we have also stated, "[w]hat *is* necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102[(12)] are satisfied." *Panzarella*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at \*14.
>
> > Tennessee Code Annotated section 50-6-102(12)(B) provides that
> >
> > An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes.
>
> Hence, to be entitled to medical benefits, an injured worker must establish, by a reasonable degree of medical certainty, that the employment "contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C). In addition, the phrase "shown to a reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(12)(D). Here, we conclude Dr. Bowman's causation statement did not meet the statutory requirements and does not support a finding that Employee is likely to prove medical causation at trial. In response to a medical questionnaire sent to him, Dr. Bowman merely agreed Employee's left knee condition was "causally related" to the work incident. Nothing in that opinion suggests Employee is likely to prove at trial that the work accident was the *primary* cause of the knee condition, "considering all causes," especially in view of evidence of a prior left knee injury, a "non-acute" tear, and pre-existing tendinitis in the left knee. Thus, we conclude Dr. Bowman's causation opinion is insufficient to establish Employee will likely prevail at trial in meeting his burden of proof as to the primary cause of his left knee condition and the need for treatment.

*Id*. at *19-22.

On September 5, 2025, Employee filed a new request for expedited hearing, relying on another questionnaire to which Dr. Bowman had responded. This time, Employee's counsel asked Dr. Bowman if it was his opinion "to a reasonable degree of medical certainty that [Employee's] on-the-job accident was the primary cause, i.e., more than 50.01% when considering all causes, of [Employee's] ruptured ACL and torn meniscus." Dr. Bowman responded, "Yes."

Also on September 5, the trial court held a status conference. In its September 8 order addressing the status conference and setting a subsequent conference, the court indicated Employer had been compliant with the prior orders regarding medical treatment but that Employee's recent move to Florida had caused difficulty in providing some of the medical treatment ordered by the court. The court noted that an appointment was set with a neurologist and that Employer was working to schedule an appointment for cognitive therapy. The trial court found that the case was not in a position for a scheduling order, but it scheduled another status hearing for January 7, 2026. That conference took place before Employee's most recent request for an expedited hearing was filed, as the order includes an addendum stating, "Since the [status] hearing, [Employee] filed a request that resulted in the scheduling of an expedited hearing on January 14, 2026, in Murfreesboro. The Court will keep the January 7 status hearing in place as a pre-expedited hearing conference." (Emphasis removed.)

On December 5, 2025, Employer filed a motion to continue the expedited hearing, stating that its counsel had "been working exhaustively to secure an independent medical opinion . . . on the causation and impairment to Employee's left knee," and indicating extreme difficulty in locating a doctor willing to perform the evaluation in the Nashville area due to Employee's prior discharge from Tennessee Orthopedic Alliance.[1] Attached to the motion were several emails between counsel for the parties. In a November 13, 2025 email, counsel for Employee informed Employer his client would agree to attend an independent medical examination with Dr. Thomas Koenig, an orthopedic surgeon, on December 18 if Employer agreed to pay mileage and all travel expenses, including two nights' stay in a hotel, and allow Employee's attorney to attend the examination. Employer's counsel subsequently informed Employee's counsel that it could agree to the first two requests but that Dr. Koenig had advised Employer that his office policy did not allow an employee's lawyer to attend a medical examination. As such, on November 25,

---

[1] Employee was discharged by his previous authorized treating physician at Tennessee Orthopedic Alliance and from any other practices under the Tennessee Orthopedic Alliance umbrella due to perceived threats to the staff.

the attorneys again exchanged emails in which Employer indicated it would try to schedule an examination with an orthopedic doctor in Florida instead.[2]

Employee objected to Employer's motion for a continuance, arguing that the four months between the date the request for expedited hearing was filed and the date of the hearing was sufficient time for Employer to have obtained a medical examination and expert opinion. Employee further argued that his request for his attorney to attend the examination was not unreasonable and that Employer had produced no statutory authority that prohibits counsel from attending such an evaluation.

Employer filed a renewed motion to continue the expedited hearing on January 7, 2026, stating that, "[A]fter a [h]earing on Employer's original [m]otion to [c]ontinue, the [j]udge encouraged the parties to attempt to resolve the issues amongst themselves" and that the trial court held the motion in abeyance.[3] Emails attached to the motion show that Employer's counsel emailed Employee's counsel on December 15, 2025 and asked, "[D]o we have a 100% yes on attendance at the Dr. Koenig [examination] on 12/18 in exchange for a brief agreed continuance of the [expedited hearing] so we can get the report back as we discussed last week?" Counsel for Employee responded that same day, stating he had spoken with his client who indicated he would not attend the examination on December 18. Employee's counsel acknowledged that his client understood this might result in a continuance and that he would "run" additional dates for the examination by his client.

Employer's counsel responded the following day, December 16, asking whether Employee could attend an examination with Dr. Koenig on January 8 and whether Employee would be agreeable to continuing the expedited hearing until March 11. Employee's counsel responded the same day, stating, "My client wants to attend the trial/motion hearing and take his chance. After advising him of our options, he prefers to move forward with us arguing that you guys were provided adequate time." He then stated, "I can still see if my client wants to attend the [examination] on the 8th, *as you're entitled to [it]*." (Emphasis added.) Later that day, Employer's counsel again emailed Employee's counsel and stated, "[T]o confirm our conversation, . . . you indicated your client agreed to attend the January 8, 2026 [exam] with Dr. Koenig . . . ." Employee's counsel responded the following day via email and stated, "I spoke with [Employee] this morning. We do *not* agree to the below and will keep things *as is* for purposes of the upcoming expedited hearing." (Emphases in original.)

---

[2] Employer stated in the motion for continuance that efforts to locate a doctor in Florida who had sufficient knowledge of Tennessee law to issue an opinion in compliance with the requirements of the statute had proven difficult.

[3] This statement is unrefuted; however, it is unclear from the record when this hearing was held. The record on appeal contains no notice setting the hearing, no transcript of such a hearing, and no scheduling order.

Employee again filed an objection to a continuance, reiterating his position that Employer had four months between the filing of the request and the hearing date to obtain its medical proof. There are no other filings in the record until the expedited hearing was held on January 14, 2026.[4] Employee, the only witness who appeared in person at the hearing, testified that his knee buckled at the time of the fall, which caused pain in his left knee. Employee presented medical records previously filed with the court in which Employee had complained about his knee pain to medical providers and the insurance adjuster assigned to the claim following the report of injury, as well as records from Dr. Bowman.

For its part, Employer presented an updated report from Dr. Hazlewood, the pain management specialist who had previously evaluated Employee at its request in 2024. Dr. Hazlewood reviewed the updated medical records received after his prior evaluation, including a December 2024 MRI of the left knee, Dr. Bowman's records, and Dr. Bowman's responses to the questionnaires sent by Employee's counsel. In his supplemental report, dated December 18, 2025, Dr. Hazlewood stated that the additional records did not change his opinion regarding the primary cause of Employee's knee condition and his ACL and medial meniscus tears. Dr. Hazlewood relied on several factors in stating that the injury was not primarily caused by the work accident, including Employee's statements to him that "it was a few hours [after the fall] that he noticed left knee pain," which was inconsistent with Employee's statements to Dr. Bowman in December 2024. Furthermore, Dr. Hazlewood noted Employee had rated his left knee pain as a "1 ½ [out of] 10" at the time of his evaluation with Dr. Hazlewood and related that he could "walk and jog without any problems." Dr. Hazlewood again reviewed the video of the accident and stated he saw no "twist of the left knee" or impact to the left knee. Although he did not dispute that Employee had an ACL and meniscus tear at the time of his surgery with Dr. Bowman, he stated to a reasonable degree of medical certainty the tears were not primarily caused by the work accident. Dr. Hazlewood believed the difference of opinion between himself and Dr. Bowman was likely due to a subsequent, intervening injury.

In its February 4, 2026 order, the trial court first denied Employer's motion for a continuance, stating it was "weighing the policy favoring expedited resolution of disputes about the nonpayment of benefits more heavily than that supporting [Employer's] request for a second employer's examination." The court then reviewed the testimony and medical proof, stating it assigned "little weight to Dr. Hazlewood's conclusion that [Employee] did

_____

[4] Although Employer filed a transcript of the January 14 hearing, there is no discussion in the transcript addressing Employer's request for a continuance. In its order, the trial court stated that it had "deferred [its] decision" on the motion for continuance until the date of the expedited hearing, implying it heard arguments on a previous date. Although Employer's brief indicated the court had issued a notice of hearing on its motion for a continuance for the date of the expedited hearing, there is no such notice in the record. As such, due to deficiencies in the record on this issue, it is unclear exactly when and how many times Employer's request to continue the expedited hearing was argued to the trial court.

not suffer the tears in his left knee in the fall," finding that Dr. Hazlewood "reached that conclusion based on matters outside the realm of medical expertise." It further stated, "Dr. Hazlewood's medical expertise does not place him in a better position than this court to quantify the amount of pain persons with knee tears should exhibit" and that "Dr. Hazlewood's medical expertise does not provide him the ability to observe the videotape in evidence and give expert testimony about the mechanical forces at play on [Employee's] left knee during his fall and whether the forces were insufficient to cause the tears in his knee." Finally, the court stated, "Dr. Hazlewood's conclusions consist as much of advocacy and his personal factual inferences as opinions based on medical expertise." The court stated Dr. Hazlewood had referred to scientific literature but "did not identify the texts he relied upon or explain how it supports his opinion." Consequently, the trial court ordered Employer to authorize Dr. Bowman to provide ongoing care for Employee's left knee injury but denied his request for temporary disability benefits due to a lack of evidence in the record as to the dates on which he would have been entitled to such benefits. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

In its notice of appeal and its brief, Employer raises two issues, which we reorder and restate as follows: (1) whether the trial court erred in denying Employer's request to continue the expedited hearing; and (2) whether the trial court erred in ordering Employer

to provide benefits for Employee's left knee.[5]  Employee contends the court did not abuse its discretion in denying the continuance and that it appropriately weighed the medical proof in its finding that Employee was entitled to benefits for the left knee.

*Motion for Continuance*

As an initial matter, a trial court has broad discretion to manage its own docket. *Valladares v. Transco Prods., Inc.*, Nos. 2015-01-0117, -0118, 2016 TN Wrk. Comp. App. Bd. LEXIS 31, at *26 (Tenn. Workers' Comp. App. Bd. July 27, 2016).  A trial court's decisions affecting the timing and pace of litigation are discretionary and will be reviewed under an abuse-of-discretion standard.  *Smith v. The Newman Grp., LLC*, No. 2015-08-0075, 2015 TN Wrk. Comp. App. Bd. LEXIS 30, at *9 (Tenn. Workers' Comp. App. Bd. Sept. 21, 2015).  An abuse of discretion occurs if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party."  *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).  "[W]e will not substitute our judgment for that of the trial court merely because we might have chosen another alternative."  *Johnson v. Walmart Assocs., Inc.*, No. 2014-06-0069, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *17 (Tenn. Workers' Comp. App. Bd. July 2, 2015).  That said, a trial court's decisions regarding the management of its docket "require a conscientious judgment, consistent with the facts, that takes into account the applicable law."  *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015).

First, we disagree with Employee's characterization that Employer had "four months" to obtain the expert medical proof it needed.  We issued our prior opinion in this case in late August 2025, and a request for hearing was filed on September 5.  It is not clear from the record when Employer's counsel first approached Employee's counsel about obtaining the evaluation with an orthopedic specialist, but, according to undisputed documents in the record, potential dates were being circulated between counsel as early as November 13, two months after the request for hearing was filed with the court, and two months before the expedited hearing date.  After being unable to secure an agreeable date, Employer's counsel initially filed its request for continuance on December 5, over a month before the expedited hearing was set, indicating it needed more time to obtain a medical examination from an expert of its choice.  Communications continued between the parties in which Employer's counsel sought to schedule the evaluation until mid-December, which was apparently after the court initially heard the motion for continuance and encouraged the parties to come to an agreement.  At no time did counsel for Employee object to Employer's request for a medical examination, and he in fact acknowledged Employer was "entitled" to one.  Furthermore, Employer's counsel noted in its motions that the trial court

---

[5] Employer's brief does not identify the proper standard of review, citing the standard initially contained in Tennessee Code Annotated section 50-6-217(a)(3) (2014), which was then amended in 2017 to the current standard of review as reflected above.

9

had encouraged them to resolve the issues concerning scheduling the employer's examination on their own, and that assertion is unrefuted by Employee's counsel. Despite these circumstances, counsel for Employee ended all discussions about scheduling the employer's examination on December 17, stating he wanted to leave the case "as is for the purposes of the upcoming expedited hearing." (Emphasis removed.)

In its order, the trial court did not discuss its reasoning for delaying the decision on the motion to continue until the morning of the expedited hearing, and the only reasoning it gave for denying the motion was the "policy favoring expedited resolution of disputes about the nonpayment of benefits more heavily than that supporting [Employer's] request for a second employer's examination." The order does not contain any discussion of Employer's numerous efforts to schedule the examination, nor does it note that Employee did not object to the examination itself. It does not contain a discussion addressing the reasonableness of Employer's request as discussed in Tennessee Code Annotated section 50-6-204(d)(1) or the various conditions Employee's counsel placed on Employee's attendance at such an examination. It instead focused on Employee's testimony regarding his request to have his attorney present at his examination.[6]

In short, Employee was aware Employer was seeking another medical evaluation as early as November and indicated a willingness to work toward scheduling that evaluation, to which he acknowledged Employer was entitled. The parties continued to discuss this evaluation, and the need for a continuance if it continued to go unscheduled, for a month before Employee decided not to proceed with the requested evaluation prior to the expedited hearing. In denying Employer's motion for a continuance to allow the employer's examination to occur prior to the expedited hearing, the trial court elected to decide Employee's entitlement to benefits for an alleged orthopedic injury without giving Employer a reasonable opportunity to present evidence from an orthopedic specialist. The trial court's action effectively denied Employer the ability to obtain an expert evaluation under subsection 204(d)(1) even though Employee agreed Employer was entitled to do so and even though the court did not determine that the request was unreasonable. Given the totality of the circumstances, we conclude the trial court abused its discretion when it failed to grant Employer's request for a continuance, as the decision resulted in an injustice to the requesting party.

*Medical Proof*

Employer also argues that the trial court abused its discretion in accrediting Dr. Bowman's June 2025 response to the medical questionnaire from Employee's counsel over

---

[6] Tennessee Code Annotated section 50-6-204(d)(1) (2025) states, "The injured employee *must* submit to examination by the employer's physician at all reasonable times if requested to do so by the employer, but the employee shall have the right to have *the employee's own physician* present at the examination, in which case the employee shall be liable to the employee's physician for that physician's services." (Emphases added.)

Dr. Hazlewood's causation opinions as stated in his supplemental report. We first note that "abuse of discretion" is not the standard of review regarding medical proof presented through documentary evidence. As stated above, when expert testimony is presented by deposition or documentation as our rules allow, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Second, the issue of whether the court improperly awarded benefits based on Dr. Bowman's questionnaire response is pretermitted by our conclusion that the trial court erred in denying Employer's request for a continuance. However, for purposes of judicial economy, we have elected to address the trial court's statements regarding its review of the medical proof.

To be admissible, an "expert's opinions [must be] based on relevant scientific methods, processes, and data." *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (emphasis removed) (internal citation omitted). Determining the admissibility of expert opinions "requires an analysis of the unique language found in Rules 702 and 703 of the Tennessee Rules of Evidence." *Id.* at 264. In addition, the "facts and data" on which an expert has relied need not be admissible for the expert's opinion to be admissible. *Id.* at 265. Moreover, when faced with conflicting expert opinions, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). However, "judges are not well-suited to make independent medical determinations without expert medical testimony supporting such a determination." *Lurz v. Int'l Paper Co.*, No. 2015-02-0462, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018).

Here, the trial court did not engage in any analysis of the admissibility of Dr. Hazlewood's expert opinions as contemplated in Rules 702 and 703 of the Tennessee Rules of Evidence. Instead, it made numerous statements regarding Dr. Hazlewood's opinions that, in our view, misapprehended a trial court's role in considering expert medical proof. The court did not appear to question Dr. Hazlewood's "methods, processes, and data." *McDaniel*, 955 S.W.2d at 263. Instead, the court rejected outright Dr. Hazlewood's qualifications as a board-certified physician to offer the medical opinions he offered. We conclude such statements were error.

First, the court determined it was in as good as a position as Dr. Hazlewood, a board-certified pain management specialist, to formulate certain medical opinions. For example, the court concluded that "Dr. Hazlewood's medical expertise does not place him in a better position than this court to quantify the amount of pain persons with knee tears should exhibit." It further determined that "Dr. Hazlewood's medical expertise does not provide him the ability to observe the videotape in evidence and give expert testimony about the

11

mechanical forces at play on [Employee's] left knee during his fall and whether the forces were insufficient to cause the tears in his knee." We respectfully disagree. We conclude that it is within the realm of *medical* expertise to formulate opinions regarding the degree of pain typically caused by an injury and the mechanical forces necessary to cause tendon or ligament tears, not legal knowledge. When presented with expert testimony, the court can analyze the trustworthiness of the underlying data as contemplated in Tennessee Rule of Evidence 703, but, absent such an analysis, it has no basis to exclude the opinions themselves. In addition, the factfinder can reach conclusions regarding the reliability of such opinions and the weight to be assigned such opinions in light of other expert opinions and evidence offered in the case.

Finally, the court's order was based on an incorrect analysis of the information before it. In further support of its reasoning on awarding the requested medical benefits, the court stated that Dr. Hazlewood "referred to scientific literature but did not identify what he relied upon or explain how it supports his opinion." In fact, in his supplemental report that was made a part of the record, Dr. Hazlewood identified nine journals and/or medical articles he relied upon in formulating his opinions. Moreover, he included in his report an extensive discussion of the *American Medical Association Guides to the Evaluation of Disease and Injury Causation, Second Edition.*[7]

In sum, although a court has the authority to analyze the trustworthiness of an expert's underlying data, consider the reliability of the expert's processes, and rely on one expert opinion over that of another, it does not have the authority to reject the expert's ability to offer opinions simply because it disagrees with those opinions. Instead, a court can weigh such opinions against other evidence presented during the hearing and select the opinion that, in its view, contains the more probable explanation. *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Here, we conclude the trial court did not properly consider the expert opinions offered by Dr. Hazlewood.

Therefore, on remand, the trial court should give Employer a reasonable opportunity to obtain a medical examination with an expert of its choice in accordance with subsection 204(d)(1) and should consider all expert opinions and the weight of the conflicting expert opinions presented, if any, but not substitute its own opinion for that of a medical expert on issues that call for an expert medical opinion.

**Conclusion**

For the foregoing reasons, we reverse the trial court's denial of a continuance and remand the case. Costs on appeal are taxed to Employee.

---

[7] In contrast, the medical proof Employee presented from Dr. Bowman at the hearing consisted of responses to two questionnaires and a single medical record from November 2025.